# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DEBORAH BRIGHT,

        Plaintiff,

v.                                                              Case No. 3:18-cv-1236-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER[2]

## I. Status

Deborah Bright ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of meningioma. Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed January 25, 2019, at 315, 331, 356, 372, 524. Plaintiff filed an application for DIB on April 1, 2015, alleging an onset disability date of January 1, 2013. Tr. at 474.[3] Plaintiff filed an application for SSI on May 5, 2015, alleging an onset disability

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed January 25, 2019; Reference Order (Doc. No. 13), entered January 28, 2019.

[3] Although actually completed on April 1, 2015, see Tr. at 474, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as March 30, 2015, see, e.g., Tr. at 315.

date of September 7, 2013. Tr. at 476.[4] The applications were denied initially, Tr. at 315-28, 329, 330, 386-88 (DIB); Tr. at 356-69, 370, 371, 389-91 (SSI), and upon reconsideration, Tr. at 331-42, 343, 344, 394-98, (DIB); Tr. at 372-83, 384, 385, 399-403 (SSI).[5]

On August 28, 2017, an Administrative Law Judge ("ALJ") held a hearing during which he heard testimony from Plaintiff, who represented herself,[6] and a vocational expert ("VE"). See Tr. at 107-26. At the time of the hearing, Plaintiff was forty-eight years old. See Tr. at 315 (indicating date of birth). The ALJ issued a Decision on October 20, 2017, finding Plaintiff not disabled through the date of the Decision. Tr. at 83-92.

Thereafter, Plaintiff through new counsel, Tr. at 79, requested review of the Decision by the Appeals Council, Tr. at 472. On August 29, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On October 18, 2018, Plaintiff commenced this action

---

[4] Although actually completed on May 5, 2015, see Tr. at 476, the protective filing date of the applications is listed elsewhere in the administrative transcript as April 1, 2015, see, e.g., Tr. at 356.

[5] Plaintiff also filed applications for DIB and SSI on July 1, 2014, which were denied initially. Tr. at 304-14 (DIB) 345-55 (SSI). It does not appear from the administrative transcript that Plaintiff requested reconsideration of the initial denials. Plaintiff is not appealing the denials of these applications.

[6] Plaintiff was represented on multiple occasions, but the representatives withdrew prior to the hearing. See Tr. at 254 (acceptance of appointment of representative Joel Dixon dated May 19, 2015); Tr. at 422 (letter from Mr. Dixon dated December 2, 2015 withdrawing from case and indicating Vicki O'Connell "will be taking over as representative); Tr. at 252 (acceptance of appointment of representative Ms. O'Connell dated December 2, 2015); Tr. at 425 (letter from Ms. O'Connell dated December 30, 2015 withdrawing from case); Tr. at 461 (letter from Ms. O'Connell dated July 13, 2017 withdrawing from case again); Tr. at 251, 428, 430 (acceptance of appointment of representative Lori Gaglione and fee agreement dated December 22, 2016); Tr. at 464 (letter from Ms. Gaglione dated August 10, 2017 withdrawing from case). At the hearing, Plaintiff testified that she had "hired" a representative, but that "they said [she] didn't need one." Tr. at 111.

through counsel under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following argument: "The ALJ erred by not including all the limitations in the hypothetical" posed to the VE. Memorandum in Support of Complaint (Doc. No. 18; "Pl.'s Mem."), filed April 11, 2019, at 5 (capitalization and emphasis omitted); see Pl.'s Mem. at 5-7. In making this argument, Plaintiff contends the ALJ erred in assessing and applying the opinions of five physicians: Dr. Ciceron Lazo,[7] Dr. Donald Freedman,[8] Dr. Reuben Brigety,[9] Dr. Shakra Junejo,[10] and Dr. Debra Troiano.[11] See id. at 5-6. On June 10, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

---

[7] Dr. Lazo examined Plaintiff in November 2014 for complaints of hand and shoulder pain, hypertension, and heart disease. See Tr. at 835-41.

[8] Dr. Freedman conducted an independent medical examination of Plaintiff in October 2015, at the direction of the Office of Disability Determination. See Tr. at 1193-96.

[9] Dr. Brigety is a non-examining state agency consultant, who conducted a review of Plaintiff's DIB and SSI applications at the initial level. See Tr. at 323-28, 364-69.

[10] Dr. Junejo is a non-examining state agency consultant, who conducted a review of Plaintiff's DIB and SSI applications at the reconsideration level. See Tr. at 337-42, 379-83.

[11] Dr. Troiano is a state agency consultant, who conducted a review of Plaintiff's earlier-filed 2014 DIB and SSI applications, see supra p. 2 n.5, at the initial level. See Tr. at 309-314, 350-55.

## II. The ALJ's Decision

When determining whether an individual is disabled,[12] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 85-92. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date." Tr. at 85 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: history right craniotomy for meningioma, seizure disorder, asthma, obstructive sleep apnea, hypertension, diabetes mellitus, and coronary artery disease." Tr. at 85 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meet or medically equals the severity of

---

[12] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 86 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) with limitations. [Plaintiff] can never climb ladders, ropes, or scaffolds, and can climb ramps and stairs no more than occasionally. [Plaintiff] can never balance. [Plaintiff] can stoop, kneel, crouch, and crawl no more than occasionally. [Plaintiff] must not have concentrated exposure to temperature extremes or to respiratory irritants such as dust, fumes, and gases. [Plaintiff] should not work around moving mechanical parts or at unprotected heights. [Plaintiff] must perform simple tasks with little variation that take a short period of time to learn of up to and including 30 days. [Plaintiff] can deal with the changes in a routine work setting.

Tr. at 86 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 90-91 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("43 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 91 (emphasis and citation omitted), such as "[i]nspector," "[g]arment [f]older," and "[h]and [p]ackager," Tr. at 92. The ALJ concluded that Plaintiff "has not been under a disability . . . from January 1, 2013, through the date of th[e D]ecision." Tr. at 92 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted, Plaintiff asserts the ALJ erred in failing to include in the VE hypothetical certain limitations. In making this argument, Plaintiff challenges the ALJ's assessment and application of five medical opinions. The undersigned initially summarizes the parties' contentions. Then, the applicable law is set out and Plaintiff's argument is addressed.

**A. Parties' Arguments**

Plaintiff asserts the ALJ's hypothetical to the VE did not include any limitations regarding Plaintiff's left hand. Pl.'s Mem. at 6. Plaintiff argues that the ALJ gave significant weight to the opinions of Dr. Lazo, Dr. Freedman, Dr. Brigety, and Dr. Junejo, and that they all "indicated that . . . [P]laintiff had limited use of her left upper extremity and this limitation was not included in the hypothetical to the VE." Id. at 5. As to Dr. Troiano, Plaintiff contends the ALJ did not address her opinions and that her "opinions are similar to the other physician opinions." Id.

Responding, Defendant initially asserts that "neither Dr. Lazo nor Dr. Freeman rendered a medical opinion . . . regarding Plaintiff's functional limitations." Def.'s Mem. at 5. Defendant argues that "while the ALJ assigned significant weight to the opinions from Dr. Brigety and Dr. Ju[n]ejo, the record does not support Plaintiff's assertion that the ALJ assigned any specific weight to the evidence from Drs. Lazo and Freeman." Id. at 6 (citation omitted). According to Defendant, "an ALJ is not required to specifically adopt— or discuss—each and every aspect of a doctor's opinion, even if the doctor is a treating doctor." Id. at 7 (citation omitted). As to Dr. Troiano, Defendant argues that "[b]ecause the ALJ relied on the opinions from Drs. Brigety and Ju[n]ejo to establish Plaintiff's RFC and because those opinions are consistent with the opinion from Dr. Troiano, any error related to the ALJ's articulation of the weight he assigned to Dr. Troiano's opinion is harmless." Id. at 9 (citation omitted).

**B. Applicable Law**[13]

The Regulations establish a "hierarchy" among medical opinions[14] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) (2006)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

---

[13] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date the claim was filed, unless otherwise noted.

[14] "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

With regard to a treating physician,[15] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1249 (11th Cir. 2019); Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's

---

[15] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

own medical records. Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the

ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

An ALJ poses a hypothetical question to a VE as part of the step-five determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted). "[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citation omitted).

## C. Physicians' Opinions / ALJ's Decision / Analysis

Dr. Lazo examined Plaintiff on November 10, 2014. See Tr. at 835-41. Dr. Lazo's examination note indicates that Plaintiff's range of motion in both wrists and hands is normal. Tr. at 835. Dr. Lazo observed, however, that Plaintiff's grip strength in her left hand is 0/5 and her strength in her left arm is 3/5. Tr. at 840.[16] Dr. Lazo found that Plaintiff has "[m]oderate to severe impairment of fine or gross dexterities" in her left upper extremity. Tr. at 840.

Dr. Freedman conducted an independent medical examination of Plaintiff on October 12, 2015. Tr. at 1193-96. Dr. Freedman made the following relevant findings. The range of motion in Plaintiff's left fingers is "severely reduced with pain reported during

---

[16] Dr. Lazo found that Plaintiff's grip strength in her right hand and strength in her right arm are both 5/5. Tr. at 840.

attempted flexion of the [third] and [fourth] digits." Tr. at 1195. Plaintiff's "[s]trength of muscles in [her] left hand and left wrist [is] at best 3/5." Tr. at 1195. Dr. Freedman did note, however, that "it appeared as though minimal effort was provided by [Plaintiff] during [the range of motion] and muscle strength assessment." Tr. at 1195. Dr. Freedman also observed that the "findings were inconsistent with complaints during examination." Tr. at 1195.

Dr. Brigety and Dr. Junejo each conducted a review of Plaintiff's DIB and SSI applications. See 323-28, 364-69 (Dr. Brigety's opinions); Tr. at 337-42, 379-83 (Dr. Junejo's opinions).[17] They each opined that Plaintiff's ability to push and pull is "limited" in her left upper extremity and that Plaintiff's use of her left upper extremity should be limited to no more than occasional handling, fingering, and feeling. Tr. at 323-24, 364-65 (Dr. Brigety's opinions); Tr. at 338-39, 380 (Dr. Junejo's opinions).

On December 2, 2014—before Plaintiff filed the applications at issue in this appeal—Dr. Troiano reviewed Plaintiff's earlier-filed DIB and SSI applications (see supra p.2 n.5). Tr. at 309-14, 350-55. Dr. Troiano opined that Plaintiff's use of her left upper extremity to handle and finger is limited. Tr. at 310, 351-52. Dr. Troiano explained as follows, "[Plaintiff] has marked decreased gross and fine dexterity limited to 1/3 work day in [left] hand." Tr. at 311, 352.

The ALJ made the following findings with regard to the opinions of Dr. Lazo, Dr. Freedman, Dr. Brigety, and Dr. Junejo:

---

[17] As noted, Dr. Brigety reviewed the applications at the initial level and Dr. Junejo reviewed them at the reconsideration level.

> Consultative examination findings from Drs. Lazo and Freedman were not suggestive of the presence of a disabling condition, and Drs. Brigety and Junejo each opined that she could perform light exertional work with additional limitations. Significant weight is given to these opinions, as they are consistent with each other and with the other objective medical evidence of record.

Tr. at 90. The ALJ did not discuss Dr. Troiano's opinions.

At the hearing, the ALJ presented two hypotheticals to the VE. The first hypothetical incorporated the limitations of the ALJ's RFC. Tr. at 86 (RFC); Tr. at 124 (hypothetical). The VE responded that Plaintiff would be able to perform the jobs of inspector, garment folder, and hand packager. Tr. at 125.[18] Relying on that testimony, the ALJ found in the written Decision that Plaintiff is capable of performing those jobs. Tr. at 91-92. For the following reasons, the undersigned finds that the ALJ's unexplained election to exclude from the RFC limitations regarding Plaintiff's upper left extremity is not supported by substantial evidence.

As an initial matter, the undersigned rejects Defendant's argument that Dr. Lazo's and Dr. Freedman's treatment notes are not medical opinions. See <u>Winschel</u>, 631 F.3d at 1179 (finding that treating physician's treatment notes constituted "medical opinions" because "[they] included a description of [Plaintiff]'s symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[ ] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Plaintiff's] impairment(s)' . . . ."); <u>Lara v. Comm'r of Soc. Sec.</u>, 705 F. App'x 804, 811 (11th Cir. 2017)

---

[18] The second hypothetical had the same limitations as the first one, but it added that the individual would be expected to be off task for at least 20 percent of the workday. Tr. at 125. The VE responded that this added limitation would "preclude all work activities." Tr. at 125.

(stating that physician's "treatment notes may constitute medical opinions if the content reflects judgments about the nature and severity of [Plaintiff's] impairments").

The ALJ erred in assessing and applying the opinions of Dr. Lazo, Dr. Freedman, Dr. Brigety, Dr. Junejo, and Dr. Troiano. As noted, the ALJ specifically assigned significant weight to Dr. Brigety's and Dr. Junejo's respective opinions. Tr. at 90. As to the opinions of Dr. Lazo and Dr. Freedman, the ALJ did not detail the weight assigned, but it appears he accepted them because he found that the physicians' findings "were not suggestive of the presence of a disabling condition." Tr. at 90. Despite accepting the opinions of Dr. Lazo, Dr. Freedman, Dr. Brigety, and Dr. Junejo, the ALJ without explanation failed to include in the hypothetical to the VE and in the RFC any of the manipulative limitations opined by the physicians. Without an explanation from the ALJ as to why he apparently rejected the portions of the physicians' opinions regarding Plaintiff's use of her left upper extremity, the undersigned cannot find the Decision to be supported by substantial evidence. It is not the duty of the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ. See Austin v. Astrue, No. 5:07CV52/MCR/EMT, 2008 WL 2385520, at *8 (N.D. Fla. June 9, 2008) (unpublished) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a treating physician's opinion, but stating that "[w]hile [the arguments] may be true, the ALJ did not make these findings"); see also Green v. Shalala, 51 F.3d 96, 100-01 (7th Cir. 1995); Cline v. Sullivan, 939 F.2d 560, 563-69 (8th Cir. 1991).

The ALJ's error in this regard frustrates judicial review and necessitates remand. See, e.g., Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 871 (11th Cir. 2012) (remanding and finding that the court "cannot determine whether the ALJ's ultimate

decision on the merits was rational and supported by substantial evidence" because the ALJ, "[w]ithout a clear explanation," excluded from the VE hypothetical and RFC a limitation opined by a physician whose opinions the ALJ gave great weight). On remand, the ALJ shall reevaluate the opinions of Dr. Lazo, Dr. Freedman, Dr. Brigety, and Dr. Junejo and absent reasons supported by substantial evidence for discounting the opinions, the ALJ shall include their stated limitations in the RFC.

As to Dr. Troiano, even though she reviewed applications that are not at issue in this appeal, her opinions are still relevant because they were part of the administrative transcript and they were based on evidence from the relevant time period. Because Dr. Troiano's opined limitations regarding Plaintiff's left upper extremity are similar to those opined by Dr. Brigety and Dr. Junejo, and they were not included in the hypothetical to the VE or in the RFC, the ALJ shall also reevaluate Dr. Troiano's opinions on remand.

## V. Conclusion

Based on the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3)**, REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Reevaluate the opinions of Dr. Ciceron Lazo, Dr. Donald Freedman, Dr. Reuben Brigety, Dr. Shakra Junejo, and Dr. Debra Troiano; specify the weight assigned to each opinion; articulate the reasons for the weight given to them; and absent reasons supported by substantial evidence for discounting the opinions, include their stated

limitations in the residual functional capacity and hypothetical to the vocational expert; and

  (B)  Take such other action as may be necessary to resolve this matter properly.

2.  The Clerk is further directed to close the file.

3.  In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on March 16, 2020.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record